IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMILY FORSYTHE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | C.A. NO. _____ |
| | § | |
| WAYFAIR, LLC | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

Plaintiff Emily Forsythe, for her Complaint, complaining of Defendant Wayfair, LLC, would show as follows:

1. Plaintiff is an individual citizen of Massachusetts.

2. Defendant is a Delaware limited liability company with a principal place of business in Massachusetts and may be served with summons through its president or any vice president or any other managing agent at its principal place of business at 4 Copley Place, 7th Floor, Boston, Massachusetts 02118.

### Jurisdiction

3. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, as it asserts discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e-1 et seq.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and Division may also be proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and Division.

COMPLAINT – Page 1

Facts

5. In January 2017, Plaintiff became employed by Defendant and worked in its Boston, Massachusetts headquarters until March 2019. In March 2018, Plaintiff was assigned by Defendant to work at a facility of Defendant in Kentucky while maintaining her status as a headquarters employee of Defendant with a designated work location and phone number at its headquarters.

6. As stated below in paragraphs 7 through 25, Plaintiff was sexually harassed by another employee of Defendant and complained about such sexual harassment, and was separately subjected to further sex discrimination by a supervisor, and then was subjected to retaliation on account of her complaint of sexual harassment, including being terminated from her employment.

7. On January 22, 2019, Plaintiff and Michael McDole ("McDole"), an employee of Defendant assigned to Plaintiff's supervision, were alone in a meeting room at a facility of Defendant in Perris, California having a conversation about his performance. McDole then moved to her side of a table and, without Plaintiff's express or implicit invitation or solicitation, sat uncomfortably close to her. Then, further without Plaintiff's express or implicit invitation or solicitation, McDole touched her left thigh with his right hand, and, even after she moved away from him, continued to sit uncomfortably close to Plaintiff. Prior to January 2, 2019, Plaintiff had met McDole, while both were employed by another employer, in October 2015, and interacted only three times, two of them work-related. On a third occasion, in December 2015, McDole expressed an interest in a personal relationship, but Plaintiff it. Thereafter, until January 22, 2019, she had no further contact with McDole.

8. On March 13, 2019, at a meeting at Defendant's headquarters in Boston, Massachusetts, again when Plaintiff and McDole were alone having a conversation about his performance, McDole, without Plaintiff's express or implicit invitation or solicitation, again sat uncomfortably close to Plaintiff. On this occasion, after Plaintiff sought to move away from him, McDole moved closer to her, to the point of one of his legs touching her, allowing no space between the two of them, as Plaintiff was sitting next to a wall.

9. On March 14, 2019, McDole, at Defendant's headquarters in Boston, without Plaintiff's express or implicit invitation or solicitation, asked Plaintiff to dinner without any pretense of the invitation being work-related, stating that he wanted to go to dinner with her when he was no longer on her team, after April 1, 2019. She told him she would meet him only for a work-related meal. He did not then pursue his invitation.

10. Between April 1, 2019 and August 14, 2019, McDole sent a series of emails to Plaintiff seeking information which he knew she did not have, in an aggressive manner, and criticized her, including to others by copying them on the emails, for not providing the information. Also, in texts on April 11, 2019, he complained to Plaintiff that she had failed him as a leader and that she is also not a good person.

11. On April 18, 2019, after Plaintiff complained in an email to McDole about his aggressive emails and suggested that she and McDole discuss communications issues, he refused, insisting that he would involve Defendant's human resources function in addressing Plaintiff's complaint about his emails, while not thereafter doing so. Plaintiff reported her communication with McDole to her immediate superior, Matt Witte ("Witte"), who then had a telephone conversation with McDole. Witte reported that McDole attacked Plaintiff in their telephone conversation.

12. On May 1, 2019, in front of Witte at the Perris, California facility, McDole again verbally attacked Plaintiff and insisted that Plaintiff leave him and Witte by themselves. According to Witte, McDole then communicated with Witte about Plaintiff in such an unprofessional manner that Witte concluded that McDole should not continue to be assigned to projects on which Plaintiff was working. Witte reported to Plaintiff that McDole could not control himself in attacking her.

13. On July 22, 2019, McDole, without Plaintiff's express or implicit invitation or solicitation, again at the Perris, California facility, stared at Plaintiff's breasts and ran his right hand down her blouse beginning above her cleavage toward her waist. When she moved away from him to avoid further contact, he laughed and got up and walked away. Later the same day, again without Plaintiff's express or implicit invitation or solicitation, McDole began to discuss Internet dating applications, speculated about the possibility of him and Plaintiff dating even while acknowledging his conflicts with Plaintiff, and invited Plaintiff to spend the afternoon and to go to dinner with him. Plaintiff refused. He repeated his unwanted invitation as both were driving away from the facility, and Plaintiff again refused. After July 22, 2019, McDole falsely told third parties that he and Plaintiff were dating. Before and after July 22, 2019, McDole made other false statements to employees of Defendant.

14. On August 4, 2019, after Plaintiff complained by email to Witte about McDole's continuing aggressive emails directed to her and about her, Witte failed promptly to remedy the problem as requested by Plaintiff.

15. On August 5, 2019, Plaintiff was reassigned to the direct supervision of Kory McKnight ("McKnight") instead of Witte, who became McKnight's immediate superior. On the same day, McKnight told Plaintiff that he had three former male colleagues at Walmart whom he wanted to bring to his team. He thereafter sought information from Plaintiff that suggested that

he intended to remove Plaintiff from his team in order to bring on the three former male colleagues at Walmart.

16. On August 14, 2019, Plaintiff complained to Witte by email about the entirety of the conduct of McDole referred to in paragraphs 7 through 13, and Witte transmitted the information provided to him by Plaintiff to Defendant's human resources function as a sexual harassment complaint against McDole. Witte advised Plaintiff that McKnight and Chris Stark ("Stark"), Witte's own immediate superior, were also made aware of her complaint against McDole. Witte also told Plaintiff that McDole had made false statements to him about Plaintiff.

17. On August 21, 2019, Plaintiff was contacted by Trevor Shaffer-Figueroa ("Shaffer"), a representative of Defendant's human resources function in Perris, California, where McDole was then working. Plaintiff detailed to Shaffer in a telephone conversation on August 27, 2019 the sexual harassment by McDole of which she had complained.

18. On August 21, 2019, when Plaintiff was at the Perris, California facility, Jim Lowe ("Lowe"), who had been assigned to projects on which McDole had worked, told Plaintiff that McDole was attempting to sabotage her career at Defendant. That same day, in connection with a meeting at the facility having nothing to do with McDole, McDole insisted upon following Plaintiff into the meeting as if he was properly included in the meeting even though he was, with good reason, not invited to participate in it. Only when it became evident that the meeting would not include McDole did McDole leave, without saying anything, but while staring at Plaintiff.

19. On September 6, 2019, Shaffer advised Plaintiff that her sexual harassment complaint against McDole had been determined to be unfounded based on McDole's denial of sexual harassment of Plaintiff. Shaffer advised that McDole, Plaintiff and Witte should have a

conversation about how to improve the work relationship between Plaintiff and McDole. He denied to Plaintiff that there were any other options available to her.

20. Prior to September 11, 2019, McKnight began to exclude Plaintiff from communications, including email and telephone conversations, and meetings, to which Plaintiff otherwise would have been a party, and contacted Plaintiff's subordinates directly without her knowledge. On September 11, 2019, Plaintiff complained to McKnight about being excluded from communications, including emails, telephone conversations and meetings to which she otherwise would have been a party. At the same time, McKnight informed Plaintiff that some or all of the former Walmart colleagues he had identified on August 5, 2019 were interviewing for positions at Defendant, including under him. Plaintiff was asked to interview, and did interview, one of the candidates in question.

21. On September 17, 2019, Plaintiff again asked McKnight to discontinue excluding her from communications, including emails, telephone conversations and meetings, to which she which otherwise would have been a party, and to cease communicating with her subordinates without her knowledge. In response, McKnight told Plaintiff that other employees of Defendant (without identifying them) were making complaints about Plaintiff and that he had already started working with human resource representatives to remove Plaintiff from his supervision. Plaintiff complained to Witte about her conversation with McKnight the same day.

22. After Plaintiff's September 17, 2019 complaint to him about her conversation with McKnight, Witte ceased communications with Plaintiff.

23. On September 19, 2019, Plaintiff complained to Shaffer that she was being subjected to retaliation on account of her complaint of sexual harassment against McDole.

24. Within a few hours after Plaintiff complained to Shaffer of retaliation, Shaffer advised Plaintiff that her complaint of retaliation had been determined to be unfounded based on McKnight's denial of retaliation against Plaintiff by McKnight, including denial of statements in their September 17, 2019 conversation Plaintiff attributed to him.

25. On September 22, 2019, Plaintiff, through counsel, notified Defendant by letter of her intent to file a charge of discrimination complaining of sexual harassment and other sex discrimination and retaliation against Defendant based on the events and statements referred to in paragraphs 7 through 24. Two days later, on September 24, 2019, Plaintiff's employment with Defendant was terminated. Initially, Defendant, through counsel, falsely claimed by letter to Plaintiff's counsel that Plaintiff had resigned her employment on September 19, 2019 despite the fact that Plaintiff continued to perform work on and after that date and was preparing to travel on a business trip to Atlanta, Georgia on behalf of Defendant on September 24, 2019. Subsequently, Defendant notified Plaintiff, on September 24, 2019, as she was preparing to leave for the business trip, that she should not proceed in that her employment with Defendant had been terminated as of that same day, September 24, 2019.

26. On October 2, 2019, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission, for joint filing with the Massachusetts Commission against Discrimination, claiming sexual harassment, other sex discrimination and retaliation based upon the events of her employment with Defendant as of September 19, 2019 described in paragraphs 7 through 24. On December 16, 2019, Plaintiff further filed a second charge of discrimination against Defendant with the Equal Employment Opportunity Commission, for joint filing with the Massachusetts Commission against Discrimination, based upon the events of her employment with Defendant after September 19, 2019, through her termination on

September 24, 2019. Plaintiff has received a notice of right to sue from the Equal Employment Opportunity Commission with respect to her first charge and is awaiting receipt of a notice of right to sue on from the Equal Employment Opportunity Commission on her second charge.

27.     Plaintiff has suffered a loss of compensation and benefits since her termination by Defendant and will continue to suffer a loss of compensation and benefits.

28.     Plaintiff has also suffered additional compensatory damages including past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## Claims

29.     For her first cause of action, Plaintiff would show that Defendant, in tolerating and encouraging the sexual harassment of her by McDole, in tolerating and encouraging, and itself carrying out, retaliation for Plaintiff's complaint of sexual harassment by McDole, in permitting sex discrimination and retaliation by McKnight, and in terminating Plaintiff's employment on September 24, 2019, violated Title VII of the Civil Rights Act of 1964. Defendant's conduct intentionally or recklessly denied Plaintiff the right to be free from harassment, discrimination and retaliation protected under Title VII of the Civil Rights Act of 1964. Plaintiff is accordingly entitled to recover from Defendant back pay, front pay, interest on back pay, compensatory damages, punitive damages, attorney's fees, prejudgment interest, and costs of court.

30.     For her second cause of action, subject to the passing of 90 days from Plaintiff's first charge of discrimination, Plaintiff would show that Defendant, in tolerating and encouraging the sexual harassment of her by McDole, in tolerating and encouraging, and itself carrying out, retaliation for Plaintiff's complaint of sexual harassment by McDole, in permitting sex discrimination and retaliation by McKnight, and, subject to the passing of 90 days from

Plaintiff's second charge of discrimination, in terminating Plaintiff's employment on September 24, 2019, violated Chapter 151B, §§ 4.1, 4.4 and 4.4A, of Massachusetts General Laws. Defendant's conduct intentionally or recklessly denied Plaintiff the right to be free from harassment, discrimination and retaliation protected under §§ 4.1, 4.4 and 4.4A. Plaintiff is accordingly entitled to recover from Defendant back pay, front pay, interest on back pay, compensatory damages, punitive damages, attorney's fees, prejudgment interest, and costs of court.

31. Plaintiff requests a jury.

WHEREFORE, Plaintiff prays that this Court grant her all relief to which she is entitled.

Respectfully submitted,

/s/ *Robert E. Goodman, Jr.*
Robert E. Goodman, Jr.
Massachusetts State Bar No. 549175
Texas State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
214-379-0823
214-379-0840 (telecopy)

/s/ *Jonathan J. Margolis*
Jonathan J. Margolis
BBO# 319980
jmargolis@theemploymentlawyers.com
Powers, Jodoin, Margolis & Mantell LLP
111 Devonshire Street
Boston, MA 02109
(617) 742-7010 ext. 203
(617) 742-7225 (fax)

COUNSEL FOR PLAINTIFF