UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10002-RGS

EMILY FORSYTHE

v.

WAYFAIR, LLC

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

January 12, 2021

STEARNS, D.J.

Emily Forsythe brings this action against her former employer, Wayfair, LLC, alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Mass. Gen. Laws ch. 151B, § 4.  Wayfair moves for summary judgment pursuant to Fed. R. Civ. P. 56.  For the following reasons, the court will allow its motion.

## BACKGROUND

The essential facts, viewed in the light most favorable to Forsythe as the non-moving party,[1] are as follows.  In January of 2017, Forsythe began

---

[1] Forsythe cursorily disputes the truth of nearly seventy paragraphs in Defendant's Statement of Undisputed Facts (Def.'s SUF) (Dkt. # 21).  *See* Pl.'s Statement of Facts (Pl.'s SOF) at 3 (Dkt. # 28).  She does not, however, identify any perceived inaccuracies in these paragraphs with specificity.  The court thus treats the challenged paragraphs as admitted except to the extent

working for Wayfair as a Senior Manager in its Industrial Engineering Department. She operated out of a facility in Hebron, Kentucky, and reported to Matt Witte.

---

they are actually contradicted by a substantive paragraph in Plaintiff's SOF (and that substantive paragraph properly cites to portions of the record in support). *See Mehic v. Dana-Farber Cancer Inst., Inc.*, 2018 WL 4189706, at *2-3 (D. Mass. Aug. 31, 2018) (noting that L.R. 56.1 "requires the non-moving party to provide citations to the record, i.e., 'affidavits, depositions, or other documentation,' with page references" to support any contention that there exists a genuine issue of material fact and that the court may "deem admitted the facts in defendants' corresponding L[.]R. 56.1 paragraph when the response paragraph either does not provide an adequate citation to the record or controvert defendant's corresponding L[.]R. 56.1 paragraph").

The court further denies the motion to strike paragraphs 6, 7, 13, 17-19, 22, 32-33, 37-38, 41, 43, 47-49, 57, 62-63, 65, 70, 72, 74-77, 79, 83-88, 90, 93-95, 98, 101, 104-107, 109, 113, 115-117, 122-124, 126, 128, 130, and 134 on evidentiary grounds. As a preliminary matter, the court questions the propriety of these evidentiary objections given that Forsythe herself relies heavily on statements that, at first glance, would be subject to a hearsay challenge, *see, e.g.*, Ex. 1 to Pl.'s SOF, and uses deposition testimony for the same purposes which she criticizes in Def.'s SUF, *compare* Pl.'s SOF ¶ 5 (using the deposition testimony of a Talent Management representative to establish the existence of a policy "against personal relationships between superiors and subordinates"), *with* Pl.'s Evidentiary Objs. ¶ 19 (Dkt. #30) (objecting to the use of that same representative's testimony to establish the existence of a policy imposing an obligation on Forsythe to report harassment). The court nonetheless determines on the merits that her challenges do not hold weight. As to the alleged hearsay statements, for example, to the extent these statements are relevant to the court's disposition, they are not being used for the truth of the matter asserted. Instead, they are being used for non-hearsay purposes, e.g., to show the effect on the listener or an individual's then-current state of mind. And as to relevancy or unfair prejudice, the court notes that it has only considered evidence to the extent it is relevant and not unfairly prejudicial in its analysis, so there is no reason to strike any evidence offered by Wayfair.

In July of 2018, Forsythe coordinated with the Talent Management Department (Talent Management) and Witte to recruit Michael McDole, a colleague from a previous employer whom she promoted as "a phenomenal operations manager, incredibly smart, hardworking, [and] really good at his job."[2]   Ex. 2 to Pl.'s SOF at 79; *see also* Ex. 9 to Def.'s SUF.   During the recruitment process, Forsythe did not disclose to Talent Management or Witte that she and McDole had consensually[3] kissed in the fall of 2015.[4] Wayfair ultimately offered McDole a position reporting to Forsythe.

McDole's employment with Wayfair began on August 3, 2018. Forsythe initially rated McDole as exceeding expectations in performance reviews.   She revised these reviews in early 2019 to reflect negative feedback, however, and characterized his performance in the first few months as "inconsistent" during her deposition.   Ex. 2 to Pl.'s SOF at 83-84.   Colleagues

---

[2] While McDole appears to have applied to Wayfair on his own initiative in 2017, the record indisputably demonstrates that Forsythe played a significant role in his 2018 recruitment.

[3] Although she now appears to deny giving consent, *see, e.g.*, Pl.'s SOF ¶ 3; Pl.'s Evidentiary Objs. ¶ 2, Forsythe admitted during her deposition that she "welcome[d]" the kiss at the time, Ex. 2 to Pl.'s SOF at 39.

[4] The interaction did not proceed beyond kissing and did not result in any further romantic relationship.   The parties dispute, however, whether the decision not to pursue a romantic relationship was mutual or came predominantly from Forsythe.

reported that Forsythe and McDole quickly began to exhibit difficulty working together, and by January of 2019, McDole was actively seeking another position within the company.[5]

Forsythe alleges that, during two separate one-on-one meetings with McDole in early 2019 (January 22 and March 13), McDole moved his chair from a position across the table from her to a position directly next to her with their knees touching. She further alleges that, during the January meeting, McDole touched her thigh. Forsythe reports having felt "uncomfortable" with the physical contact and having tried to move her chair back to put space between them. Ex. 2 to Pl.'s SOF at 122; *see also id.* at 123; Ex. 14 to Def.'s SUF at 5, 6. McDole disputes that either incident occurred.

McDole ultimately left Forsythe's team on April 1, 2019 for a position as a Senior Manager in Wayfair's Operations Department. In his new role, which was based in California, McDole no longer reported to Forsythe, although he still had occasional professional interactions with her. These interactions became increasingly hostile,[6] and when Forsythe suggested

---

[5] Forsythe knew that McDole was interviewing for other positions within the company at the time. *See, e.g.*, Ex. 11 to Def.'s SUF.

[6] Forsythe alleges that McDole frequently sent her "aggressive" and bullying emails between April and August of 2019. *See* Pl.'s SOF ¶ 11. She reports that these emails "concern[ed] information that he knew she did not have and criticized her to others, by copying them on the emails, for not

4

asking Talent Management and Witte to mediate their disputes, McDole agreed. Forsythe subsequently requested, however, that they try to resolve the issues on their own.[7] The meeting with Talent Management never occurred.

McDole complained about Forsythe to Witte on several occasions beginning in April and May of 2019. He was not the first to raise concerns about Forsythe with Witte; employees had been complaining about her performance as early as the summer of 2018. These employees reported that Forsythe could be "rude," "unprofessional," condescending, and difficult to work with. *See*, *e.g.*, Exs. 16-18, 22-24, 31 to Def.'s SUF.

In July of 2019, Forsythe visited a Wayfair facility in California.[8] Forsythe alleges that, during this visit, McDole touched her blouse between

---

providing the information." *Id.*

[7] In reaction to McDole's allegedly rude response to her request, Forsythe complained directly to Witte. Although she asserts that Witte, after consulting with McDole, reported that McDole had "attacked" her over the telephone to the point that Witte expressed concerns about McDole's mental stability, Pl.'s SOF ¶ 12, review of the relevant testimony reveals no more than that Witte believed McDole to be "upset" during the call. Ex. 5 to Pl.'s SOF at 142. And while Witte admitted to questioning McDole's mental stability at the time, he clarified that his concerns related to the long hours McDole was working (which Witte attributed to McDole's military training), and *not* to his interactions with Forsythe. Ex. 5 to Pl.'s SOF at 142-150.

[8] McDole was working out of this facility at the time and told several superiors that he did not want Forsythe to come to the building. Forsythe made the visit despite his objections.

her breasts and that, when she moved away from him, he laughed and walked away. She further alleges that, later that day, McDole began to discuss dating applications with her. McDole denies having touched Forsythe, but he concedes that he may have joked with her about dating applications.

Kory McKnight became Forsythe's immediate supervisor on August 5, 2019. Nine days later, Forsythe emailed Witte to complain again about McDole's conduct. She attached a document to that email containing, *inter alia*, allegations of inappropriate touching.[9] Witte referred the email to Talent Management, and Trevor Shaffer-Figueroa, a senior manager, began an investigation. Shaffer-Figueroa interviewed Forsythe, McDole, and several other employees conversant with the professional interactions between McDole and Forsythe. He also reviewed the contents of the emails exchanged between McDole and Forsythe.

On September 13, 2019, while the investigation was ongoing, Witte emailed Candice Smith, the Director of Talent Management, to discuss performance issues that McKnight and others had reported regarding Forsythe. Smith forwarded the email to Shaffer-Figueroa and asked for an update on his investigation. On September 16, 2019, Shaffer-Figueroa

---

[9] In a subsequent email to Witte, however, Forsythe stated that McDole was "good in person" and only "ha[d] an edge" when using email. *See* Ex. 13 to Def.'s SUF.

replied that his investigation had concluded and that he had determined Forsythe's allegations to be unsubstantiated.  He subsequently relayed his determination to Forsythe.

The next day, McKnight met with a project manager on Forsythe's team who reported challenges working with Forsythe.  Within hours, Forsythe sent McKnight an email insisting that he not contact her team directly.  She then drove to the office where McKnight was working and exchanged harsh words with him.  Later that day, she emailed McKnight with a purported summary of their conversation from her personal email account claiming that McKnight had expressed a desire to remove her from his team.

Forsythe then emailed Talent Management alleging that McKnight had retaliated against her for bringing a sexual harassment complaint against McDole.  After discussing the allegations with Forsythe and McKnight (and after verifying with Smith that no one in Talent Management had been working to remove Forsythe from her position), Shaffer-Figueroa again determined that Forsythe's claim was unsubstantiated.  He called Forsythe on September 19, 2019, to relay his findings and discuss what should be done next.  Forsythe indicated that she "would be very interest[ed] in having you talk to [Smith] and [the Talent Management] team and putting together a compelling severance package."  Ex. 50 to Def.'s SUF at 4-5.  Shaffer-

Figueroa consulted with Smith and counsel at Wayfair, all of whom agreed that Forsythe's request for a severance package was an offer of resignation.

Shaffer-Figueroa emailed Forsythe on September 23, 2019, accepting her resignation and attaching a severance agreement offering two months of additional pay.  Talent Management then informed McKnight and Witte that Forsythe had resigned effective September 24, 2019.  Forsythe disputes their interpretation of her words as an offer of resignation and instead maintains that she was involuntarily terminated.   After pursuing charges of discrimination before the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission Against Discrimination (MCAD), she filed this action with the court on January 3, 2020.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position."  *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).  "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment."  *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st

Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Forsythe raises three sets of claims (under federal and state law, respectively[10]) against Wayfair: (1) sexual harassment; (2) discriminatory termination; and (3) retaliation.  The court assesses the validity of these claims using the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this paradigm, a plaintiff bears the initial burden "to show by a preponderance of the evidence a prima facie case of discrimination" or retaliation.  *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995).  If the plaintiff makes the requisite showing, the burden shifts to the employer to "rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision."  *Id.*  If the defendant proffers a legitimate, nondiscriminatory reason for its action, "the burden of production shifts back to the plaintiff employee, requiring the employee to provide evidence that 'the employer's articulated justification [for the termination] is not true

---

[10] Because the parties do not suggest that the federal and state law claims should be treated differently in any material respect, and because it is generally the practice of the Massachusetts Supreme Judicial Court "to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. ch. 151B," *Ponte v. Steelcase Inc.*, 741 F.3d 310, 319 n.9 (1st Cir. 2014), quoting *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994), the court analyzes the claims together.

but a pretext.'" *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016)

(footnote omitted) (alteration in original), quoting *Blare*, 419 Mass. at 443.

### A. Sexual Harassment Claims

The court first addresses Forsythe's sexual harassment claims.  To

establish a prima facie case of sexual harassment, Forsythe must show:

> (1) that she (or he) is a member of a protected class; (2) that she
> was subjected to unwelcome sexual harassment; (3) that the
> harassment was based upon sex; (4) that the harassment was
> sufficiently severe or pervasive so as to alter the conditions of
> plaintiff's employment and create an abusive work environment;
> (5) that sexually objectionable conduct was both objectively and
> subjectively offensive, such that a reasonable person would find
> it hostile or abusive and the victim in fact did perceive it to be so;
> and (6) that some basis for employer liability has been
> established.

*Ponte*, 741 F.3d at 320, quoting *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d

225, 228 (1st Cir. 2007).

The court is not persuaded that Forsythe can establish the fourth

element, namely, severe or pervasive harassment.  Harassment is "severe or

pervasive" when it "alter[s] the conditions of the victim's employment and

create[s] an abusive working environment."  *See Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993), quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

57, 67 (1986).  While any determination on this issue is often fact-specific

and best left to a jury, the court finds it significant that the relevant factors –

for example, "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *id.* at 23 – uniformly weigh against any finding of severity or pervasiveness in this case.  Forsythe identifies only three isolated incidents of inappropriate touching, and the court does not believe that, even when considered within the context of the "nasty" exchanges between the two, *see* Ex. 9 to Pl.'s SOF at 33, any reasonable juror could find the conduct involved sufficiently frequent, severe, or threatening as to render Forsythe's work environment abusive.

Even if Forsythe could demonstrate severity or pervasiveness, her claim would founder on the sixth element of a viable harassment claim because she has not shown any basis for employer liability.  McDole was a subordinate and then a coworker of Forsythe.  Under Title VII or Chapter 151B, when harassment is carried out by a non-supervisory coworker, "an employer can only be liable if the harassment is causally connected to some negligence on the employer's part."  *Noviello v. City of Boston*, 398 F.3d 76, 95 (1st Cir. 2005).  "Typically, this involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it."  *Id.*

Forsythe does not suggest that Wayfair had any reason to know about McDole's harassment until she complained in an email to Witte on August 14, 2019.  To establish a prima facie case, therefore, Forsythe needs to demonstrate that Wayfair failed to take prompt action in response to the email complaint.  She does not (and cannot) make the necessary showing here.  The record indicates that Witte forwarded the email to Talent Management a little over a week after receiving it and that Talent Management promptly initiated an internal investigation.  *See Walker v. City of Holyoke,* 523 F. Supp. 2d 86, 107 (D. Mass. 2007) ("As the Ninth Circuit has convincingly explained, '[t]he most significant immediate measure an employer can take in response to a [harassment] complaint is to launch a prompt investigation to determine whether the complaint is justified.'" (alterations in original)), quoting *Swenson v. Potter,* 271 F.3d 1184, 1193 (9th Cir. 2001).  And while Forsythe appears to dispute the good faith of this investigation, she does not offer any evidence that investigators acted in bad faith or failed to consider any relevant information.  She merely asserts, without any support in the record, that Shaffer-Figueroa's determination was "based largely, if not exclusively, upon McDole's denial," Pl.'s Opp'n at 19 (Dkt. #27), despite voluminous evidence in the record that Shaffer-Figueroa weighed the testimony of several colleagues familiar with

12

the relationship between the Forsythe and McDole, the content and tone of emails Forsythe alleged to be aggressive and bullying, and the wavering inconsistencies in Forsythe's versions of events over time. The court accordingly will enter judgment for Wayfair on these claims.

## B. Discriminatory Termination Claims

The court next turns to Forsythe's discriminatory termination claims. To establish a prima facie case of discriminatory termination, Forsythe must show:

> (1) she was a member of a protected class; (2) she possessed the necessary qualifications and adequately performed her job; (3) she was nevertheless dismissed; and (4) the employer sought someone of roughly equivalent qualifications to perform substantially the same work.

*Caesar v. Shinseki*, 887 F. Supp. 2d 289, 297 (D. Mass. 2012).

Forsythe is on marshy ground with respect to the third element. No reasonable juror could find that Forsythe's explicit request for a severance package amounted to anything other than a voluntary offer to resign, whatever her later regret.

Even if Forsythe could establish a prima facie case of discrimination, Wayfair has articulated a legitimate, nondiscriminatory reason for her termination (its good faith, even if mistaken, interpretation of her request for

13

a severance package as an offer of resignation[11]).  Moreover, Forsythe has offered no evidence demonstrating pretext on Wayfair's part.[12]  At most, she suggests that her taking September 20, 2019, as a vacation day is inconsistent with any intent to resign, but this argument is rather difficult to parse given that Wayfair did not accept Forsythe's resignation until three days later, on September 23, 2019.  The court will thus enter judgment in Wayfair's favor on the discriminatory termination claims.

## C. Retaliation Claims

Finally, the court addresses Forsythe's retaliation claims.  "To make a prima facie showing of retaliation, the plaintiff must show that she engaged in protected conduct, that she suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse

---

[11] Plaintiff offers no evidence to discredit the good faith basis for this interpretation, and the court declines to infer bad faith where Shaffer-Figueroa appears to have taken care to consult with his supervisor, Smith, and legal counsel prior to treating Forsythe's request as an offer to resign.

[12] The court acknowledges that, because "Massachusetts is a pretext only jurisdiction," *Bulwer*, 473 Mass. at 681, quoting *Blare*, 419 Mass. at 443, Forsythe need not show for her state law claim that Wayfair's explanation specifically concealed a discriminatory animus.  She does, however, need to "present evidence from which a reasonable jury could infer that 'the respondent's facially proper reasons given for its action against him were not the real reasons for that action.'"  *Id.* at 682, quoting *Wheelock Coll. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976).

14

action." *Ponte*, 741 F.3d at 321.  Here, even assuming *arguendo* that Wayfair

terminated Forsythe (a fact about which the court disagrees, for the reasons

discussed above), Forsythe has failed to causally link that action to either her

sexual harassment or retaliation complaint.  The only factor weighing in her

favor is timing,[13] and precedent is clear that "chronological proximity does

not by itself establish causality."  *Wright v. CompUSA, Inc.*, 352 F.3d 472,

478 (1st Cir. 2003).  This is especially the case where, as here, "[t]he larger

picture undercuts any claim of causation."  *Id.* (alteration in original),

quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997).

Forsythe, after all, was the first party to mention separation from Wayfair as

an appropriate response to her complaints, and Shaffer-Figueroa treated her

---

[13] Forsythe attempts to find support in the allegedly "questionable"
circumstances of the Talent Management investigations into her allegations
of harassment and retaliation.  *See* Pl.'s Opp'n at 7.  She fails, however, to
credibly identify any material inadequacies in either investigation.  The
closest she comes is to assert that Shaffer-Figueroa's notes memorializing
conversations with Forsythe's colleagues were in some respects inaccurate.
Pl.'s SOF ¶ 24.  But this allegation does not find any support in the record.
While Skagg testified that Shaffer-Figueroa's notes left out "context," she
explicitly declined to call them inaccurate.  Ex. 9 to Pl.'s SOF at 24.  And after
reviewing the nature of this missing context, the court finds nothing that
raises any legitimate concern about the integrity of the overall investigation.

Forsythe also attempts to find support in comments McKnight
allegedly made about wanting to replace her.  But these comments are
irrelevant to the issue of causation because the parties agree that McKnight
had no authority to fire Forsythe and played no role in any decision by Talent
Management to accept her resignation.  *See* Pl.'s Opp'n at 3 n.3, 8 n.4.

severance request as an offer of resignation only after conferring with Smith and counsel about the accuracy of his interpretation of the request. The court will accordingly allow the motion for summary judgment on Forsythe's retaliation claims.

## ORDER

For the foregoing reasons, the motion for summary judgment is <u>ALLOWED</u> in its entirety. The clerk will enter judgment for Wayfair on all claims and close the case.

SO ORDERED.

/s/Richard G. Stearns
UNITED STATES DISTRICT JUDGE